UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

WALNUT HILL ESTATE ENTERPRISES,
LLC, JONOTHAN BENEFIELD, and
JULIE BENEFIELD,

       Plaintiffs,

   v.                                    NO. 2:08-cv-01142 FCD GGH

                                    <u>MEMORANDUM AND ORDER</u>

CITY OF OROVILLE, DAVID GOYER,
SHARON ATTEBERRY, JASON TAYLOR,
and MITCHELL BROWN,

       Defendants.
_____/

----oo0oo----

    This matter comes before the court on defendants City of
Oroville (the "City"), David Goyer ("Goyer"), Sharon Atteberry
("Atteberry"), Jason Taylor ("Taylor"), and Mitchell Brown's
("Brown") (collectively "defendants") motion for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure.  Plaintiffs Walnut Hill Estate Enterprises, LLC
("Walnut Hill"), Jonothan Benefield ("Benefield"), and Julie
Benefield (collectively "plaintiffs") oppose the motion.  The

1

court heard oral argument on the motion on November 6, 2009.
For the reasons set forth herein, defendants' motion for summary
judgment is GRANTED.

## BACKGROUND[1]

This case arises out of defendants' conduct relating to the
Oroville Inn (the "Inn") located in downtown Oroville.
Specifically, on June 29, 2006, defendants evacuated the
tenants, some of whom were disabled and non-ambulatory, from the
Inn, which contained 61 residential units, 57 of which were
rented at the time. (See Decl. of Jonothan Benefield
("Benefield Decl."), filed Oct. 2, 2009, ¶ 8.)  Plaintiffs
allege the evacuation, and defendants' conduct in relation
thereto, caused damages in the form of loss of business, loss of
property rights, devaluation of their business and business
opportunities, emotional distress, and physical injury to
Benefield due to stress.  (Compl. ¶ 13.)

On September 17, 2003, a document was recorded in Butte
County purporting to transfer title to the Inn to Walnut Hill.

---

[1]     Unless otherwise noted, the facts herein are
undisputed.  (See Def.'s Reply to Pls.' Response to Stmt. of
Undisputed Facts in Supp. of Mot. for Summ. J. ("UF"), filed
Oct. 8, 2009.)  Where the facts are disputed, the court recounts
plaintiff's version of the facts.

Both plaintiff and defendant have filed objections to
evidence.  The court has reviewed the objections and the
disputed evidence and relies only on admissible evidence herein.
See Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir.
2002) ("A trial court can only consider admissible evidence in
ruling on a motion for summary judgment.").  Much of the
evidence plaintiffs object to is irrelevant to this court's
determination of the motion.

(UF ¶ 8.)[2]  Plaintiffs Jonothan and Julie Benefield (the "Benefields") are the managing members of Walnut Hill.  (UF ¶ 9.)  Walnut Hill hired on-site managers to handle the day to day operation of the Inn.  (UF ¶ 10.)  At all relevant times, Robert White ("White") was the on-site manager.  (UF ¶ 12.)  The Benefields never lived at the Inn, nor did they visit the Inn on a daily basis while White was the on-site manager.  (UF ¶¶ 13-14.)  However, the Benefields visited approximately once or twice a month, and Jonothan Benefield spoke to White on the phone almost daily.  (UF ¶ 14.)

Shortly after White became the on-site manager of the Inn, the elevator in the building failed an inspection by CalOSHA. (UF ¶ 15.)  On January 19, 2006, White received a Preliminary Order to correct eight categories of conditions.  (UF ¶ 15.) Subsequently, on February 27, 2006, White received an Order to Correct Unsafe Conditions or Show Cause from CalOSHA based upon the failure to correct the conditions set forth in the January 19, 2006 Preliminary Order.  (UF ¶ 17.)  For several months, while he waited for Walnut Hill to have the elevator repaired, White reset the elevator and adjusted the door sensors in order to keep the elevator operable; however, sometime before June 12, 2006, the reset switch broke.  (UF ¶¶ 18-19.[3])

---

[2]  The parties dispute whether these transfers were effective.  However, this dispute is immaterial to the court's analysis.

[3]  Plaintiffs assert that this fact is disputed based upon an Exhibit attached to the Declaration of Erwin Knorzer, which consists of a transcript of an interview by Knorzer of White for radio broadcast on June 29, 2006.  Plaintiffs seek to admit the content of this interview for the truth of the matter asserted.  As such, this is inadmissible hearsay.  Plaintiffs

3

Plaintiff Benefield contends repairs were made to the elevator on June 7, 2006. (Benefield Decl. ¶ 21.) It is undisputed, though, that sometime prior to June 12, 2006, the elevator became completely inoperable. (UF ¶ 20.) Several tenants began complaining to White. (UF ¶ 21.) Tenants also called defendant Goyer, a Code Enforcement Officer with the Oroville Police Department, to complain about the broken elevator. (UF ¶ 22.) Disabled and non-ambulatory tenants lived on the upper floors of the Inn and could not get out of the building without using the elevator. (UF ¶ 23.)[4] Subsequently, on or about June 20, 2006, Benefield learned that the elevator was malfunctioning again and scheduled an appointment for repair on June 30, 2006. (Benefield Decl. ¶ 23.)

On June 12, 2006, defendant Goyer received a phone call from the driver of a trash disposal truck, advising that there had been an electrical fire at the Inn and that PG&E had been notified to turn off power to the building until the wiring was

---

fail to assert any applicable exception under which these statements may be admitted. To the extent plaintiffs seek to point to contradictions between White's declaration and his statements made during the interview, plaintiffs cannot sufficiently raise a triable issue of fact simply by raising issues regarding the credibility of defendants' evidence. See Nat'l Union Fire. Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment.").

[4] Plaintiff asserts that according to information *known to him*, there were only two non-ambulatory individuals in the Inn at the relevant times, both of whom lived on the second floor. (Benefield Decl. ¶ 32.) However, plaintiff does not identify the basis for this knowledge, and his bald assertion does not directly address defendants' evidence that there were eleven non-ambulatory tenants, some on top floors of the building. Therefore, he fails to raise a triable issue of fact on this matter.

repaired.  (UF ¶ 24.)  As a result of this call, Goyer and
defendant Taylor, the Community Revitalization and Economic
Development Officer ("CREDO") for the Oroville Police
Department, visited the Inn.  (UF ¶¶ 25-26.)  Both PG&E and the
fire department had just left the site.  (UF ¶ 27.)  Power to
much of the Inn was off, pending repair of electrical wiring.
(UF ¶ 29.)  Goyer observed scorch marks on the wall, melted
conduit, and melted insulation on the electrical wires where the
conduit was broken; based upon these observations, he concluded
that there had been an electrical fire.  (Dep. of David Goyer
("Goyer Dep.") at 26:2-20.)  Plaintiff contends that there is no
evidence of fire but only evidence of electric "arcing."  (Ex. D
to Decl. of Frear Stephen Schmid ("Schmid Decl."), filed Oct. 2,
2009.)

     White was already aware of the exposed wiring that led to
the arcing at issue.  (Decl. of Robert White ("White Decl."),
filed Sept. 15, 2009, ¶ 5.)  The arcing wires were in a conduit
that ran along the top of a low part of the complex.  Children
used the conduit as a handhold or foothold to gain access to the
first floor roof area at the rear of the building and the
conduit had broken and fallen away from the building in the
summer of 2005.  During that summer, the power going to the air
conditioners on the roof had to be turned off because roofers
refused to go on the roof with the conduit arcing problem.
White asserts that Benefield was aware of the conduit arcing
problem at this time.  White also told Benefield that a
maintenance man was burned after the conduit at issue came into
/////

1  contact with water that was backing up on the roof due to a

2  clogged drain.  (Id.)

3      During a conversation on June 12, 2006, Goyer, Taylor, and

4  White spoke at length about the numerous, serious maintenance

5  issues with the building that had not been corrected.  (UF ¶ 30;

6  White Decl. ¶ 6.)  Goyer and Taylor mentioned that all of the

7  problems at the building were starting to add up and could lead

8  to an evacuation.  (UF ¶ 30.)  The Inn was issued two Correction

9  Notices, detailing eleven items for corrections.  (Ex. 2 to

10  Benefield Decl.)  There were no deadlines given for the repair

11  within these notices.  (Id.; Benefield Decl. ¶ 22.)

12      Over the next two weeks, either White or a maintenance

13  person from the Inn accompanied Goyer and other personnel from

14  the City to inspect the building; they worked with Goyer and the

15  city personnel on a daily basis to resolve problems identified

16  by Goyer and city personnel.  (White Decl. ¶ 7.)  White asserts

17  that the city staff were always professional and courteous in

18  their dealings with him.  (White Decl. ¶ 8.)  White was in

19  constant communication with Benefield about the status of the

20  inspections and informed him that the City was contemplating

21  evacuating the building if unsafe conditions were not corrected

22  immediately.  (White Decl. ¶ 7.)  Benefield asserts that he had

23  no notice of the potential for evacuation prior to June 29,

24  2006.  (Dep. of Jonothan Benefield ("Benefield Dep."), at 16-

25  21.)

26      Two or three days prior to June 29, 2006, Goyer and Taylor

27  approached defendant Brown, Chief of the Oroville Police

28  Department, regarding the Inn.  (UF ¶ 34.)  They informed him

6

that there were a number of unsafe conditions at the Inn, which required an emergency evacuation.  (UF ¶ 35.)  Brown initially declined to declare an emergency and ordered Taylor and Goyer to closely monitor the situation and maintain close contact with White regarding the repairs.  (UF ¶ 36.)

On the morning of June 29, 2006, Goyer met with White about the status of the repairs.  (UF ¶ 37.)  The elevator was not working.  (UF ¶ 39.)  Defendants present evidence that in response to his inquiry regarding when the repairs would be made, White told Goyer that the elevator repair company told him that no repairs had been scheduled or would be scheduled until the Inn's delinquent account was paid.  (UF ¶ 37.)  Goyer also contacted the elevator repair company and was given the same information.  (UF ¶ 38.)  Plaintiffs present evidence that Elevator Technology, Inc., an elevator repair company that performed work at the Inn, never has refused service based upon delinquent accounts, and that it did not receive any phone calls from the City of Oroville with respect to the Inn.  (Decl. of Peggy Bates ("Bates Decl."), filed Oct. 2, 2009, ¶¶ 4-6.)  However, nothing in the record clarifies whether White or Goyer called Elevator Technology, Inc. or a different elevator repair company.

Brown met with Fire Chief Pittman ("Pittman") and learned that Pittman did not have enough personnel to evacuate the eleven non-ambulatory tenants from the Inn in case of an emergency and did not have the staff to put the building on a fire watch.  (UF ¶ 40; Decl. of David Pittman ("Pittman Decl."),

filed Sept. 15, 2009, ¶ 3.[5])  As a result of his inspection of
the Inn on June 12, 2009, Pittman had determined that various
code violations, including (1) the failure to maintain emergency
egress for occupants from the multiple floors of the structure;
(2) the failure to remove and correct electrical and structural
fire hazards; and (3) the failure to replace previously fire-
protected open shafts, constituted emergency conditions
requiring the Inn to be immediately evacuated.  (Ex. 1 to Frear
Decl.)

On June 29, 2006, defendant Brown ordered the evacuation of
the Inn after he concluded that conditions at the building posed
an immediate, continuing, and potentially life-threatening
danger to human occupants.  (UF ¶ 33.)  After Brown ordered the
evacuation, he notified the City Administrator of the evacuation
order.  (UF ¶ 42.)  Goyer served White with a Notice of
Substandard Building and Order of Abatement of the public
nuisance and posted the notice at the Inn.  (UF ¶ 43.)  Taylor
contacted or attempted to contact all of the other lien holders
and interested parties in title.  (UF ¶ 44.)  The City paid the
costs of relocating, housing, and feeding the displaced tenants
while the abatement order was in effect.  (UF ¶ 45.)

On June 30, 2006 and in the days that followed, City staff
met with White and Benefield regarding the repairs that needed
to be done to lift the evacuation order.  (UF ¶ 46.)  The

---

[5]     Plaintiffs move to strike portions of the Pittman
declaration as undisclosed expert testimony and hearsay.  The
court denies plaintiffs' motion as the cited testimony is not
expert testimony and the asserted hearsay is not being offered
for the truth of the matter asserted.

evacuation order was in effect for approximately seven or eight days. (UF ¶ 47.) Walnut Hill initially appealed the nuisance abatement order, but withdrew the appeal after correcting the code violations. (UF ¶ 49.) The evacuation order was lifted by Brown after repairs were made, and when the Fire Chief and code enforcement staff were comfortable concluding that the building was no longer unsafe for human habitation. (UF ¶ 47.)

Plaintiffs contend that none of the conditions at the Inn constituted an emergency/imminent peril condition that required evacuation. (Benefield Decl. ¶¶ 24-36; Decl. of Byron D. Foster ("Foster Decl."), filed Oct. 2, 2009, ¶ 9.) Plaintiffs bring claims under 42 U.S.C. § 1983 for alleged violations of their First, Fourth, Fifth, Ninth,[6] and Fourteenth Amendment rights arising out of the evacuation of the Inn. (Compl., filed May 23, 2008.)

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[6] Defendants move for summary judgment on plaintiffs' claim under the Fifth Amendment Takings Clause because "plaintiffs have not pled or proved the necessary elements for bringing a takings claim in federal court." Defendants also move for summary judgment on plaintiffs' claim under the Ninth Amendment on the basis that it is not a source of substantive rights. (Defs.' Mot. to Dismiss [Docket #14-2], filed Sept. 15, 2009, at 7.) Plaintiffs wholly fail to address these claims in their opposition. The court construes such silence as a non-opposition. Accordingly, defendants' motion for summary judgment on these claims is GRANTED.

9

56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  The evidence must be viewed in the light most favorable to the nonmoving party.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party.  See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint.  See Nissan Fire & Marine, 210 F.3d at 1107.  Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

/////

/////

10

**ANALYSIS**

**A.   Equal Protection**

Plaintiffs claim that defendants violated their rights under the Equal Protection Clause of the Fourteenth Amendment.[7] Plaintiffs argue that the City created an irrational distinction between property owners whose property it wanted to acquire and other property owners. (Pls.' Opp'n, filed Oct. 2, 2009, at 16.)  Plaintiffs also contend that defendants' conduct was motivated by the types of individuals whom plaintiffs rented to, specifically low income tenants and referrals from the Butte County Behavioral Health Department. (Id.; Benefield Decl. ¶¶ 17-18.)  Defendants argue that plaintiffs fail to support this claim with any evidence.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amdt. 14, § 1.  This is "essentially a direction that all similarly situated persons should be treated alike." City of Cleburne v. Cleburne Living Ctr., 437 U.S. 432, 439 (1985). "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its

---

[7]   In their complaint, plaintiffs allege that defendant Jonothan Benefield is of British citizenship and that defendants' actions against plaintiffs were motivated by their animus regarding Benefield's ethnicity and nationality. (Compl. ¶ 12(e).)  In their opposition, plaintiffs neither address plaintiff Benefield's ethnicity or nationality nor submit any evidence in support of this allegation.  As such, the court deems that plaintiffs have abandoned this theory of liability.

improper execution through duly constituted agents." Sioux City
Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923); see
Williams v. Vidmar, 367 F. Supp. 2d 1265, 1270 (N.D. Cal. 2005)
(noting that the Equal Protection clause "is not a source of
substantive rights or liberties, but rather a right to be free
from discrimination in statutory classifications and other
governmental activity"). "A successful equal protection claim
may be brought by a "class of one," when the plaintiff alleges
that it has been intentionally treated differently from others
similarly situated and that there is no rational basis for the
difference in treatment." SeaRiver Maritime Fin. Holdings, Inc.
v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). However, "[a]n
equal protection claim will not lie by 'conflating all persons
not injured into a preferred class receiving better treatment'
than the plaintiff." Thornton v. City of St. Helens, 425 F.3d
1158, 1167 (9th Cir. 2005) (quoting Joyce v. Mavromatis, 783
F.2d 56, 57 (6th Cir. 1986)).

        "[S]tate action that does not implicate a fundamental right
or a suspect classification passes constitutional muster under
the equal protection clause so long as it bears a rational
relation to a legitimate state interest." See Armendariz v.
Penman ("Armendariz II"), 75 F.3d 1311, 1327 (9th Cir. 1996)
("The City has an obvious interest in preventing safety and
sanitation hazards by enforcing the housing code."), overruled
on other grounds by Crown Point Dev., Inc. v. City of Sun
Valley, 506 F.3d 851, 856-57 (9th Cir. 2007). The Ninth Circuit
has explicitly noted that a municipality "has an obvious
/////

                                    12

interest in preventing safety and sanitation hazards by
enforcing the housing code." Id.

However, "the rational relation test will not sustain
conduct by state officials that is malicious, irrational or
plainly arbitrary." Id. (citations omitted); see Flores v.
Pierce, 617 F.2d 1386, 1389 (9th Cir. 1980) (recognizing that
the deviation from previous procedural patterns and the adoption
of an ad hoc method of decision making without reference to
fixed standards, among other things, were sufficient to raise an
inference of pretext on an equal protection claim).   In
Armendariz II, the Ninth Circuit found that the plaintiffs had
demonstrated triable issues of fact arising out of the alleged
arbitrary enforcement of zoning and land use regulations that
had resulted in the eviction of numerous tenants and the closing
down of the plaintiffs' properties. Id. at 1326-28.   In support
of their Equal Protection Clause claim, the plaintiffs submitted
the affidavit of a commercial developer who had met with city
officials to discuss and plan a proposed commercial center on
property then occupied by the plaintiffs' buildings.  Id. at
1327.   The developer and officials discussed methods of
preventing the plaintiffs from renting vacant apartments and
removing utility meters, which would require additional permits.
Id.  The developer gave an official an inventory of buildings
from which meters could possibly be removed.   Id.  The first 35
buildings that were subject to emergency sweeps, with two
exceptions, were buildings included in the inventory.   Id.
After the inspections, the buildings were closed for as many as
/////

1  six weeks before the owners were informed why their properties
2  had been closed.  Id. at 1313.

3      Under these facts, the Armendariz II court concluded that
4  the plaintiffs had presented sufficient evidence that the
5  defendants were motivated by a desire to deflate the value of
6  the plaintiffs' buildings, purchase them, and replace them with
7  a shopping center.  The court held that this evidence was
8  sufficient to support the plaintiffs' theory that the defendants
9  "created an irrational distinction between property owners whose
10  property the City wanted to acquire and other property owners."
11  75 F.3d at 1326.

12      In this case, plaintiffs fail to present evidence remotely
13  comparable to that in Armendariz II.  Plaintiffs fail to present
14  any evidence that defendants sought to purchase the Inn or had
15  plans for the property that were furthered by the evacuation of
16  the Inn on June 29, 2006.  Unlike in Armendariz II, on June 12,
17  2006, prior to the evacuation and temporary closure of the
18  building, defendants provided Correction Notices regarding
19  problems at the Inn.  Subsequently, on June 29, 2006, after
20  verifying that some of these problems had not been addressed,
21  including the inoperative elevator, defendants evacuated the Inn
22  and posted a Notice of Substandard Building and Order of
23  Abatement.  Immediately thereafter, unlike in Armendariz II,
24  City staff met with plaintiff Benefield regarding the repairs
25  that needed to be done to lift the evacuation order.  Moreover,
26  City staff promptly responded to White's requests for re-
27  inspections so the evacuation order could be lifted as quickly
28  as possible.  Finally, the evacuation order was lifted within

14

seven to eight days, after the code violations were corrected.
Unlike the circumstances present in Armendariz II, the
undisputed facts in this case demonstrate that defendants'
conduct was reasonably related to the legitimate government
interest in ensuring public safety through enforcement of the
housing code.

Furthermore, plaintiffs fail to demonstrate triable issues
of fact that the code violations were merely a pretext to
arbitrarily single out the Inn for code enforcement.  The only
evidence cited by plaintiffs in support of their equal
protection claim is the statement allegedly made by defendant
Brown during a meeting in September 2005 that "we do not like
those type of people here."  (Benefield Decl. ¶ 17.)  To the
extent that this statement is admissible, it is inadequate to
support an inference that the evacuation was based upon the
City's desire to acquire the Inn.  See Rose v. Wells Fargo &
Co., 902 F.2d 1417, 1423 (9th Cir. 1990) (holding that a stray
remark, without other evidence, is insufficient to demonstrate
pretext and withstand summary judgment on a claim for
discrimination); see also Nesbit v. Pepsico, Inc., 994 F.2d 703,
705 (9th Cir. 1993); Merrick v. Farmers Ins. Group, 892 F.2d
1434, 1438 (9th Cir. 1990).  First, it is unclear from the
statement as to what "type of people" Brown was allegedly
referring.  Second, as this comment was allegedly made in
September 2005, it is unclear how this related to defendants'
decision to evacuate the property for seven to eight days in
June and July 2006.  See McGinest v. GTE Serv. Corp., 360 F.3d
1103, 1138 (9th Cir. 2004) ("[S]tatements by nondecisionmakers,

15

nor statements by decisionmakers unrelated to the decisional

process itself, cannot alone suffice to satisfy the plaintiff's

burden.").[8]

Therefore, defendants' motion for summary judgment

regarding defendants' equal protection claim is GRANTED.

**B.   Substantive Due Process**

Plaintiffs also allege that defendants violated their

rights to substantive due process under the Fourteenth Amendment

by their "capricious and abusive code enforcement activities."

(Pls.' Opp'n at 17.)  Defendants contend that they had a

legitimate governmental objective for their conduct.

"To state a substantive due process claim, the plaintiff

must show as a threshold matter that a state actor deprived it

of a constitutionally protected life, liberty, or property

interest."  Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir.

2008).  "However, [t]he Supreme Court has 'long-eschewed . . .

heightened [means-ends] scrutiny when addressing substantive due

process challenges to government regulation' that does not

impinge on fundamental rights."  Id. (quoting Lingle v. Chevron

U.S.A., Inc., 544 U.S. 528, 542 (2005)).  As such, "the

'irreducible minimum' of a substantive due process claim

challenging land use action is failure to advance any legitimate

---

[8]      Plaintiffs' citation to Catanzaro v. Weiden, 140 F.3d
91, 96 (2d Cir. 1998), is unpersuasive.  In Catanzaro, the
plaintiff provided statistical evidence to support the claim
that defendants engaged in a systematic policy of racial
discrimination in violation of the Equal Protection Clause.  In
this case, plaintiffs neither argue discrimination on the basis
of race nor offer any evidentiary support, statistical or
otherwise, for such a claim.  As such, Catanzaro is
inapplicable.

governmental purpose.'"  Id. (quoting North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 484 (9th Cir. 2008)); Matsuda v. City and County of Honolulu, 512 F.3d 1148, 1156 (9th Cir. 2008) ("[S]tate action which neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights will violate substantive due process only if the action is not rationally related to a legitimate governmental purpose.") (internal quotations omitted).  A plaintiff bears an "exceedingly high burden" in demonstrating that a municipality behaved in a constitutionally arbitrary fashion.  Matsuda, 512 F.3d at 1156.

When executive action is at issue, "only egregious official conduct can be said to be arbitrary in the constitutional sense: it must amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective."  Shanks, 540 F.3d at 1088 (citing County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 198 (2003) (rejecting substantive due process claim because city engineer's refusal to issue building permits "in no sense constituted egregious or arbitrary government conduct").  Decisions based upon erroneous legal interpretation or made with a lack of due care are not necessarily constitutionally arbitrary.  Id.; see Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992) (rejecting claims "that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law"); Brittain v. Hansen, 451 F.3d 982, 996 (9th Cir. 2006) ("[S]ubstantive due process

17

secures individuals from 'arbitrary' government action that

rises to the level of 'egregious conduct,' not from reasonable,

though possibly erroneous, legal interpretation."). The court's

task "is not to balance 'the public interest supporting the

government action against the severity of the private

deprivation.'" Id. (quoting Kawaoka v. City of Arroyo Grande,

17 F.3d 1227, 1237-38 (9th Cir. 1994)). Rather, a plaintiff

cannot sustain a substantive due process claim if "[i]t is at

least fairly debatable" that a municipality rationally furthered

its legitimate interest through its action. Id.

      In this case, defendants present evidence that they sought

to enforce various building codes in order to prevent safety and

sanitation hazards. See Armendariz II, 75 F.3d at 1327 ("The

City has an obvious interest in preventing safety and sanitation

hazards by enforcing the housing code."). There is no evidence

that the enforcement of the codes was arbitrary. Rather,

plaintiffs were provided a list of problems to be corrected on

June 12, 2006, including issues with the elevator that impacted

the non-ambulatory tenants' ability to exit the building in an

emergency. City officials worked with White and other employees

at the Inn to resolve these issues. However, when the elevator

was not repaired on June 29, 2006 and Goyer received information

from an elevator repair service that no such repair was

scheduled, Brown consulted with the Fire Chief and subsequently

ordered an emergency evacuation. Even if such decision lacked

due care, "[i]t is at least fairly debatable" that defendants

rationally furthered its legitimate interest in protecting the

public safety through code enforcement by evacuating the

building until the code violations were cured, including the
repair of the elevator.[9]  See Shanks, 540 F.3d at 1089.

Plaintiffs assert that the evacuation was "a deliberate and
bad faith attempt to inflict damage on the plaintiffs . . . ,
put them out of business, and get rid of the perceived
'undesirable' tenants at the building." (Pls.' Opp'n at 17.)
As set forth above in the court's analysis of plaintiffs' Equal
Protection Claim, plaintiff has failed to present any evidence
of bias, malice, or pretext.  See Kawakoa, 17 F.3d at 1237-38
(rejecting substantive due process claim when plaintiff "merely
assert[ed]" that decision was arbitrary and pretextual without
providing any evidence; cf. Del Monte Dunes at Monterey, Ltd. v.
City of Monterey, 920 F.2d 1496, 1508 (9th Cir. 1990)
(concluding that there was a triable issue of fact when the city
approved a project subject to conditions and then "abruptly
changed course and rejected the plan, giving only broad
conclusory reasons"); Sinaloa Lake Owners' Ass'n v. City of Simi
Valley, 882 F.2d 1398, 1410 (9th Cir. 1989) (holding that the
plaintiffs had alleged sufficient facts to withstand a motion
for judgment on the pleadings where they claimed that government
officials were "bent on destroying the dam for no legitimate
reason[] and determined to conceal that decision until the last
possible moment to prevent plaintiffs from taking advantage of
available legal processes").

/////

---

[9]  To the extent plaintiffs contend that the inoperative
elevator was not a code violation, "[o]fficial decisions that
rest on an erroneous legal interpretation are not necessarily
constitutionally arbitrary."  Shanks, 540 F.3d at 1089.

19

1    Accordingly, defendants' motion for summary judgment

2   regarding plaintiffs' substantive due process claim is GRANTED.

3   **C.    Procedural Due Process**

4    Plaintiffs also allege that defendants violated their

5   rights to procedural due process under the Fourteenth Amendment

6   by evacuating the Inn without giving plaintiffs notice and an

7   opportunity to be heard.  (Compl. ¶ 12(c).)  Defendants argue

8   that plaintiffs received sufficient notice and alternatively,

9   that they are entitled to qualified immunity.

10    "To obtain relief on a procedural due process claim, the

11   plaintiff must establish the existence of (1) a liberty or

12   property interest protected by the Constitution; (2) a

13   deprivation of the interest by the government; and (3) lack of

14   process."  <u>Shanks</u>, 540 F.3d at 1090.  "Generally, due process

15   requires that 'the government provide notice and an opportunity

16   to be heard before it deprives a person of property.'"  <u>City of</u>

17   <u>Santa Monica v. Gonzalez</u>, 43 Cal. 4th 905, 927 (2008) (quoting

18   <u>Customer Co. v. City of Sacramento</u>, 10 Cal. 4th 368, 400

19   (1995)).  "[I]t is only in extraordinary circumstances involving

20   the necessity of quick action by the State or the impracticality

21   of providing any meaningful pre-deprivation process that the

22   government may dispense with the requirement of a hearing prior

23   to the deprivation."  <u>Armendariz v. Penman ("Armendariz I")</u>, 31

24   F.3d 860, 865-66 (9th Cir. 1994) (citing <u>Logan v. Zimmerman</u>

25   <u>Brush Co.</u>, 455 U.S. 422, 436 (1982)) (internal quotations

26   omitted), *reversed on other grounds by* <u>Armendariz II</u>, 75 F.3d

27   1311.

28   /////

20

1    Public officials are entitled to qualified immunity for
2    acts that do not violate "clearly established . . .
3    constitutional rights of which a reasonable person would have
4    known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Prior
5    to the United States Supreme Court's decision in Pearson v.
6    Callahan, 129 S. Ct. 808 (2009), when considering a defendant's
7    motion for summary judgment on the ground of qualified immunity,
8    a court had to consider as "[t]he threshold question . . .
9    whether, taken in the light most favorable to the party
10   asserting injury, the facts alleged show that the officer's
11   conduct violated a constitutional right." Bingham v. City of
12   Manhattan Beach, 329 F.3d 723, 729 (9th Cir. 2003), *superceded*
13   *by* 341 F.3d 939 (citing Saucier v. Katz, 533 U.S. 194, 201
14   (2001)).  If a violation could be made out, the next step was to
15   determine whether the right was violated or the law governing
16   the official's conduct was clearly established such that "it
17   would be clear to a reasonable officer that his conduct was
18   unlawful in the situation he confronted." Id. (quoting Saucier,
19   533 U.S. at 202); Act Up!/Portland v. Bagley, 988 F.2d 868, 871
20   (9th Cir. 1993).  However, in Pearson, the Court held that
21   consideration of the issues in this sequence is no longer
22   mandatory.  129 S. Ct. at 818.  Rather, judges may exercise
23   their "sound discretion in deciding which of the two prongs of
24   the qualified immunity analysis should be addressed first in
25   light of the circumstances in the particular case." Id.
26   Ultimately, where a defendant's conduct violates constitutional
27   rights and the law is clearly established, the defendant may not
28   claim qualified immunity.

1    For a constitutional right to be clearly established, "its

2    contours must be sufficiently clear that a reasonable [officer]

3    would understand that what he is doing violates that right at

4    the time of his conduct."  Eng v. Cooley, 552 F.3d 1062, 1075

5    (9th Cir. 2009) (internal quotations and citation omitted).

6    Thus, the Supreme Court held in Saucier that: "The relevant,

7    dispositive inquiry in determining whether a right is clearly

8    established is whether it would be clear to a reasonable officer

9    that his conduct was unlawful in the situation he confronted.

10   If the law did not put the officer on notice that his conduct

11   would be clearly unlawful, summary judgment based on qualified

12   immunity is appropriate."  533 U.S. at 201-02.

13       The law is clearly established that "[s]ummary governmental

14   action taken in emergencies and designed to protect the public

15   health, safety, and general welfare does not violate due

16   process."  Armendariz I, 31 F.3d at 866 (citing Hodel v.

17   Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 299-

18   300 (1981) (holding that statute allowing for order of immediate

19   cessation of a mining operation for violation of the statute or

20   a permit condition was justified under the emergency exception

21   to procedural due process because of the need for swift action

22   to protect the public health and safety); North Am. Cold Storage

23   Co. v. Chicago, 211 U.S. 306, 319-20 (1908)).  Moreover, states

24   traditionally have been accorded "great leeway in adopting

25   summary procedures to protect public health and safety."  Mackey

26   v. Montrym, 443 U.S. 1, 17 (1979) (upholding summary suspension

27   of drivers refusing to take breath-analysis test pending outcome

28   of a prompt postsuspension hearing); Sinaloa Lake Owners, 882

22

F.2d at 1406.  "Because government officials need to act promptly and decisively when they perceive an emergency, no predeprivation process is due."  Sinaloa Lake Owners, 882 F.2d at 1406.  Further, other Circuits have held "that the emergency evacuation of tenants from a dangerous and potentially life-threatening structure qualifies as an 'extraordinary situation'" and justifies action without a predeprivation hearing.  Grayden v. Rhodes, 345 F.3d 1225, 1237 (11th Cir. 2003) (holding that tenants were not entitled to pre-deprivation hearing before evictions of apartments that were plagued by serious problems including collapsed ceilings, major leaks, constant mold and mildew, water leakage from light fixtures, and roach and insect infestations); see also Flatford v. City of Monroe, 17 F.3d 162, 167, 168 (6th Cir. 1994) ("Protecting citizens from an immediate risk of serious bodily harm falls squarely within those 'extraordinary situations.' . . .  [W]here the need to protect lives is the basis for [an emergency eviction], government officials should not be made to hesitate in performing their duties, particularly where postdeprivation remedies can immediately correct any errors in judgment."); Richmond Tenants Org., Inc., v. Kemp, 956 F.2d 1300, 1307 (4th Cir. 1992) (holding, in a federal public housing case, that "in the absence of exigent circumstances, the Due Process Clause of the Fifth Amendment requires the government to provide for notice and an opportunity to be heard before a tenant may be evicted").

However, the emergency exception does not apply "where the officials know no emergency exists, or where they act with reckless disregard of the actual circumstances."  Armendariz I,

23

31 F.3d at 866.   In this case, as set forth above, plaintiffs have failed to provide evidence to support their allegations that defendants knew there was no emergency or that defendants evacuated the building to further an ulterior motive.   Cf. Armendariz I, 31 F.3d at 866 (reversing summary judgment and denying qualified immunity where plaintiffs presented evidence that defendants knew there was no emergency and took action to further other policies); Sinaloa Lake Owners, 882 F.2d at 1406 (reversing motion to dismiss where plaintiffs alleged defendants knew no emergency existed).[10]

Accordingly, qualified immunity exists unless the law was clearly established that the emergency exception to procedural due process did not apply.   Plaintiffs do not cite, nor could the court locate, any case law that would have put defendants on notice that the conditions at the Inn did not substantiate an emergency that justified evacuation.   It is undisputed that on the day of the evacuation, the elevator was still inoperable, despite notice to plaintiffs of the problem on June 12, 2006. It is also undisputed that there were eleven non-ambulatory tenants on upper floors that could not evacuate the building in case of emergency and that the fire department would be unable to take the necessary precautions to guard against such an emergency.   While defendants were also aware of the inoperable elevator on June 12, 2006, it was not until they received the

_____

[10]    Rather, plaintiffs present the declaration of an expert, who opines that the conditions at the Inn on June 29, 2006 did not provide the basis for an emergency evacuation. Because, as set forth infra, the court concludes that defendants are entitled to qualified immunity, the court does not address defendants' objections to plaintiffs' expert.

information on June 29 that service had not been scheduled,[11]
that they declared an emergency situation.   Plaintiff fails to
cite any case law that holds an emergency may not be created by
the failure to timely correct a condition that poses a risk to
public health and safety.

Plaintiff's citation to United States v. James Daniel Good
Real Property, 510 U.S. 43, 53 (1993) and City of Santa Monica
v. Gonzalez, 43 Cal. 4th 905 (2008) are unpersuasive as both are
inapplicable and factually distinguishable.   Specifically, in
James Daniel Good Real Property, the Court held that the *ex
parte* seizure of forfeitable property did not satisfy due
process because real property cannot abscond and the court's
jurisdiction can be preserved without prior seizure.   510 U.S.
at 57.   However, unlike the issue and facts presented in this
case, the Court did not address whether an emergency justified
seizure of the property or whether the facts in that case
constituted such an emergency.   Similarly, in City of Santa
Monica, a case decided two years *after* the evacuation of the
Inn, the California Supreme Court did not address the

---

[11]   Plaintiff presents evidence that defendants were
mistaken in their understanding that no repairs had been
scheduled.   However, "even where an officer's actions are based
on a mistaken conclusion, he is entitled to immunity so long as
the mistaken conclusion is objectively reasonable."   Armendariz
I, 31 F.3d at 869 (citing Act Up!/Portland v. Bagley, 988 F.2d
868, 872 (9th Cir. 1993)).   In this case, the undisputed
evidence demonstrates that defendant Goyer was informed by White
that no repairs were scheduled and that he independently
confirmed this.   The court finds that defendants' conclusions
were reasonable under the circumstances.

The court also concludes that any mistaken belief of
defendants regarding the codes applicable to the operation of
the elevator was also reasonable.

applicability of an emergency exemption.  Rather, the City of

Santa Monica court held that procedural due process had been met

where the property owner was given notice and numerous

opportunities to be heard before his property was demolished.

43 Cal. 4th at 927-28.  Moreover, the court noted that due

process does not compel "the government to provide advance

notice of all possible civil remedies that might be pursued in

the even of noncompliance with a legal obligation."  Id. at 927.

As such, plaintiffs' arguments based upon this authority are

without merit.

     Under the law that existed at the time of the evacuation,

it was clear (1) that states and government officials have great

leeway in adopting summary procedures to protect public health

and safety; and (2) that emergency conditions allow summary

government action without a predeprivation remedy.  Because

plaintiffs fail to provide any evidence that defendants knew

there was no emergency and because the law did not clearly

establish that the circumstances in this case did not constitute

an emergency, the court concludes that defendants are entitled

to qualified immunity.[12]

---

[12]  The court notes that qualified immunity applies only
to individual defendants.  Defendants move for summary judgment
as to all claims against all defendants, including defendant
City, for lack of evidence.  When the nonmoving party has the
burden of proof at trial, the moving party need only point out
an absence of evidence.  Devereaux v. Abbey, 263 F.3d 1070, 1076
(9th Cir. 2001).
     Under Monell and its progeny, a plaintiff may hold a
municipality liable under section 1983 if his injury was
inflicted pursuant to city policy, regulation, custom, or usage.
Chew v. Gates, 27 F.3d 1432, 1444 (9th Cir. 1994) (citing
Monell, 436 U.S. at 690-91, 694).  Plaintiffs wholly fail to
address their burden under Monell and similarly fail to present
                                             (continued...)

1    Therefore, defendants' motion for summary judgment

2    regarding plaintiffs' procedural due process claim is GRANTED.

3    **D.   Right to Petition Claims**

4    Plaintiffs also allege that defendants violated their right

5    to redress and petition under the First Amendment by failing to

6    give notice and a hearing prior to the evacuation of the Inn.

7    (Compl. ¶ 12(a).)  Defendants argue that plaintiffs have failed

8    to state a claim and alternatively, that they are entitled to

9    qualified immunity.

10   Plaintiffs fail to cite to any case law which supports a

11   constitutional claim based upon the First Amendment under the

12   circumstances presented by this case.   Indeed, plaintiffs rely

13   upon procedural due process rationale and the California Supreme

14   Court's decision in <u>City of Santa Monica</u>.   Therefore, for the

15   reasons set forth above in the court's analysis of plaintiffs'

16   procedural due process claim, defendants' motion for summary

17   judgment regarding plaintiffs' First Amendment right to petition

18   claim is GRANTED.

19   **E.   Fourth Amendment Claims**

20   Finally, plaintiffs allege that defendants violated their

21   Fourth Amendment rights by wrongfully entering and seizing the

22   property.  (Compl. ¶ 12(b).)  Defendants argue that plaintiffs

23   /////

24   /////

25

26   _____

27       [12](...continued)
     any evidence to support claims against the City.  Accordingly,
     defendants' motion for summary judgment regarding plaintiffs'
28   procedural due process claim as to the City is also GRANTED.

27

have failed to state a claim and alternatively, that they are
entitled to qualified immunity.[13]

The Fourth Amendment protects the right of people to be
secure in their houses and effects against unreasonable searches
and seizures.  The Supreme Court has explained that "a 'seizure'
of property . . . occurs when 'there is some meaningful
interference with an individual's possessory interests in that
property.'"  Soldal v. Cook County, Ill., 506 U.S. 56, 61 (1992)
(quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).
However, the Fourth Amendment is not violated if officers comply
with one of its recognized exceptions to the warrant
requirement, including valid consent or a showing of exigent
circumstances.  Id. at 65.

Similar to the court's analysis regarding plaintiffs'
procedural due process claims, the law in June 2006 did not
clearly establish that the conditions at the Inn were
insufficient to constitute exigent circumstances or that the
manner of evacuation was unreasonable under the circumstances.
Again, plaintiffs have failed to cite any cases that are legally
or factually related to the circumstances before the court in
this case.  Rather, they conclusorily argue, based upon legal
conclusions improperly opined upon by their expert, that the
circumstances did not present an exigency or that only the non-
ambulatory tenants should have been evacuated.  However, the

---

[13]    Because, as set forth *infra*, the court concludes that
the individual defendants are entitled to qualified immunity and
plaintiffs have failed to present any evidence on their Monell
claims, the court does not reach the merits of defendants'
contention that plaintiffs do not have standing to assert this
claim.

court is not aware of any legal authority that would have put a reasonable officer on notice that evacuation of the building was unreasonable or unconstitutional where there were numerous cited code violations, many of which had not been corrected and at least one of which prevented several tenants from evacuating the building in case of emergency.  Cf. San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 975-76 (9th Cir. 2005) (holding that qualified immunity did not apply to defendant officers who shot the plaintiffs' dogs because such conduct was clearly unreasonable under the circumstances).  As such, the court concludes the individual defendants are entitled to qualified immunity.[14]

Therefore, defendants' motion for summary judgment regarding plaintiffs' Fourth Amendment claim is GRANTED.

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.  The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: November 9, 2009.

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[14]  Again, plaintiffs wholly fail to address their burden under Monell and similarly fail to present any evidence to support their claims against the City with respect to their Fourth Amendment claims.  Accordingly, defendant City's motion for summary judgment regarding plaintiffs' Fourth Amendment claim is also GRANTED.